THE SOUTHERN BANK OF GEORGIA, plaintiff in error, vs. THE MECHANICS SAVINGS BANK, defendant in error.

[1.]  Where a bank is sued, an appearance by the bank to take advantage of an important privilege secured by the charter, is a waiver of any irregularity in the service of the writ.

[2.]  Where a bill of exchange or draft is endorsed *in full* by the payees, suit cannot be maintained in the name of the payees, while the endorsement stands.

[3.]  Where two sets of notarial protests upon the same bill, are filed under the act of 1836, both are entitled to be read without further proof by the Notary.

[4.]  Under the 17th section of the charter of the Southern Bank of Georgia, no action can be brought against said bank under said charter, until special demand is made of the debt or due claimed by the creditor.

Assumpsit, in Decatur Superior Court.    Tried before Judge ALLEN, October Term, 1858.

This was an action of assumpsit brought by the Mechanics Savings Bank against the Southern Bank of Georgia, on three bills of exchange, of which the following are copies :

" SOUTHERN BANK OF GEORGIA,
                Bainbridge, August 30th, 1857.
$3000.    Sixty days after date pay to the order of S. B. Williams, Cashier, at Nassau Bank, New York City, three thousand dollars.
                H. H. HUBBARD, Cash'r."
    To Cashier of Dandridge Bank, Dandridge, Tenn., No. 309."

Endorsed.  "Pay to Geo. W. Duer, Cashier, or order.
S. B. WILLIAMS, Cash'r."
Words written across the face, " acccepted,
WM. A. BRYAN, Cash'r."

"SOUTHERN BANK OF GEORGIA.
Bainbridge, July 22d, 1857.

$3000.  Ninety days after date pay to the order of S. B
Williams, Cashier, (acceptance waived) three thousand dollars.                          N. L. CLOUD, Pres.
To Bank of the Republic, New York City, No. 326."
Endorsed.  " Pay to Jno. R. Kearney, Assistant Cashier, or
order.                          S. B. WILLIAMS, Cash'r."

"SOUTHERN BANK OF GEORGIA,
Bainbridge, July 1st, 1857.

$3000.  Ninety days after date pay to the order of S. B.
Williams, Cashier, (acceptance waived) three thousand dollars.                          N. L. CLOUD, Pres.
To Bank of Republic, New York City, No. 308."
Endorsed.  " Pay Jno. R. Kearney, Assistant Cashier, or
order.                          S. B. WILLIAMS, Cash'r."

Service was acknowledged in the usual form, and process
waived on the orignal declaration by R. W. Hubbard.  At
the appearance Term, an affidavit, of which the following is
a copy, was sworn to in open Court.

" GEORGIA, Decatur Superior Court,

Mechanics Savings Bank,  ⎫
vs.                         ⎬ April Term, 1858.
The Southern Bank of Georgia.  ⎭

Appeared in open Court, Rufus W. Hubbard, Cashier of
the Southern Bank of Georgia, who being duly sworn, says
that the Southern Bank of Georgia has a substantial defence
to the suit against it by the Mechanics Savings Bank ; and

that the Southern Bank of Georgia, is less prepared for trial, than it will be at the next Term of this Court.

(Signed.)                R. W. HUBBARD, Cash'r.

Sworn to in open Court, this 28th April, 1858.

LUKE MANN, Cl'k, S. C.

Upon the foregoing affidavit, the Court continued the cause until the next Term, when defendant filed his plea, denying that R. W. Hubbard was Cashier of the Bank, or that he had authority to acknowledge service or waive process as aforesaid. The Court, on motion, ordered this plea to be stricken, because it was not verified by affidavit.

Plaintiff having tendered in evidence, the bills of exchange, and certain papers purporting to be notarial protests, defendants counsel objected to the protests, on the ground, that they did not show the non-payment of the bills, nor that the defendant had notice of the dishonor of the same. Counsel for plaintiffs, then tendered in evidence, as notarial protests of said bills, other papers not attached to them, but which did show the non-payment of the bills, and that notice of the dishonor had been properly given. Counsel for defendant objected to the introduction of the last mentioned papers, " because they contained notarial acts, subsequent to the original protests." The Court overruled the objection, and the jury returned a verdict in favor of the plaintiff for the sum of nine thousand dollars, with interest and costs of suit, and five per cent. damages.

Defendants counsel moved for a new trial, on the following grounds :

1st. Because R. W. Hubbard, who acknowledged service, and waived process, had no authority so to do ; and the Court erred in not dismissing the case, on motion, for want of service.

2d. Because the Court refused to hear the issue tendered by said bank, denying the authority of said R. W. Hubbard to acknowledge service, and waive process.

3d. Because plaintiff showed no title in himself, to said bills of exchange.

4th. Because the plaintiff had neither alleged in his declaration, nor proven on the trial, that any demand had been made on the bank, for the payment of said bills, before suit was brought on the same.

5th. Because the Court erred in allowing the second set of protests to go to the jury, as evidence of notice of the dishonor of the bills.

6th. Because the Court erred in allowing the bills of exchange, and notarial protests to go to the jury, as evidence of indebtedness of defendant to the plaintiff.

7th. Because the Court erred in its charge to the jury, that the plaintiff was entitled to five per cent. damages, if the bills were returned protested for non-payment, there being no allegation of damages in plaintiff's declaration.

8th. Because the verdict is contrary to law, in this, that it finds for the plaintiff, the principal debt, with five per cent. damages, when the verdict for damages should have been added to the principal, and the whole found in bulk as principal.

The Court refused to grant the new trial, and defendant, by counsel, excepted.

LAW & SIMS, for plaintiff in error.

COLE, contra.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Ought the Court to have sustained the motion to dismiss this case?

[1.] The first ground taken in the motion, was, that R. W. Hubbard, who acknowledged service and waived process upon the writ, was not at the time, nor since, an officer of the Southern Bank of Georgia, and had no authority to make said acknowledgment and waiver, or to bind the said bank,

nor did he undertake, by signing his name as President, Cashier, or other officer of said bank, to waive service or process.

A sufficient reply to this objection is, that the President of the bank came into Court at the appearance Term, and made oath, under the 17th section of the charter, that the bank had a substantial defence to the suit, and that said bank was less prepared for trial, than it would be at the next Term; and thus the trial was postponed for six months. The plaintiff being entitled, under the charter, to take judgment at the first Term, unless this affidavit was made. It is immaterial, therefore, whether Hubbard had authority to do what he did or not, this appearance ratified his act.

[2.] The second ground taken to dismiss the case, was, that the plaintiff had not shown any title in himself, to the bills of exchange sued on, or any authority to sue said bills in the name of the plaintiffs. Neither was there any averment in the plaintiffs declaration of the transfer of said bills by the payee to the plaintiff.

The papers sued on, in this case, could not be transferred by delivery, but by endorsement only; and they are endorsed in full; and these endorsements prove title out of the plaintiff. It is said, that it was a mere inadvertence that the endorsements were not stricken out, having been put there, merely for the convenience of collecting these bills. This may be so; and probably is. And yet it is rather unaccountable, that when the objection was made in the Court below, to the plaintiff's right to maintain this action, thus calling the attention, of course, specially to this point, the endorsement was suffered to remain.

The Court, we think, erred in overruling this ground.

[3] The defendants counsel tendered an issue, and offered to prove that R. W. Hubbard had no authority to bind the bank by his acknowledgment of service and waiver of notice. This application was disallowed by the Court, because it was not sworn to. Perhaps the Court was techni-

Southern Bank of Ga. vs. Mechanic's Saving Bank.

cally right, in as much as it was a dilatory proceeding. But the Court was right for another reason. Conceding the want of authority in Hubbard, still, the defendant coming in and pleading to the action, was estopped from denying the sufficiency of the service.

Another question raised in the record is, as to the admissibility of the notarial protests. There were duplicate papers. Those accompanying the bills, and which counsel in argument calls the orignals, did not state that notice was given of the dishonor of the bills. This objection having been made, another set were offered in proof, containing this statement. All of these papers had been filed in accordance with the Act of 1836; *Cobb*, 273. Defendant's counsel contended in the Court below, and insists here, that the latter set should have been proven by the Notary, so that he might have an opportunity of cross-examining him.

I would simply suggest, that he would have made nothing by it. When was any evidence ever elicited from a Notary Public or merchant's *swearing* clerk, hurtful to their employers?

The Act of 1836, is very comprehensive, and we think, justified the Judge in admitting the testimony. Neither set are dated. It is only conjectural, therefore, that the set attached to the bills are the originals, as they have been termed. The explanation of this matter, is no doubt this. It is only under our law, that these protests, by being filed, are made evidence. It is not so in New York. The first set were made out in conformity with the custom in New York. But the omission, as to notice, being discovered, the second set were amended in that particular. Both were made out, from a memorandum book, kept by the Notary for that purpose.

[4.] The plaintiffs having closed, the defendant moved that the case be non-suited, on the ground, amongst others, that it was not averred or proven, that a demand had been made on the bank before suit had been brought. We hold that

this was necessary.   By the 17th section of the charter of the Southern Bank of Georgia, it is  provided, that "If said bank shall at any time fail, or refuse to redeem any of its notes *on demand,* or pay  any  other of its  debts, when  due, *and payment demanded,* it shall be lawful for the holders of such bills, or creditors of said bank  as  aforesaid, immediately to bring  suit against said bank  for the recovery of  the same; and  there shall be  judgment  against said bank, at  the first Term of the Court  to which said suits are returnable, unless the President and Cashier of  said bank, will  swear that the bank  has a substantial defence to  said suit, and  that  said bank is less prepared for trial than it will be at the next Term of said Court; and when judgment shall be rendered against said bank, execution  shall issue against  the property of the stockholders, which execution, shall first be levied on the property of the bank; but if no property of the bank can be found, the sheriff shall make an entry on the execution to that effect; and  it shall  be  his  duty  forthwith  to levy  said execution upon the individual property of any of  the stockholders, and so proceed until said execution is satisfied."   *Pamphlet Acts,* 1855, 1856, p. 95.

In as much as the bill holder or creditor was entitled by the charter to  get his judgment at the first Term  to  which his action was  brought, it was  reasonable  and  right that he should be required to demand  the payment  of his debt before suit.   The act is clear and imperative upon this point.

To obviate this  objection, it is  suggested by counsel, that this is an action at common law, and not brought under the charter.   We will not stop to consider  whether the bank can be sued in any other way.  Perhaps it may be ; and the remedy therein given is cumulative only.   The question is,  how was this suit  brought ?  If  not under  the charter,  why was the defendant forced to  come into Court at the appearance Term, and make the showing required by the charter, to  enable him to prevent a judgment at the first Term ?   That was  the appropriate time  for  the disclaimer to be  made, that the pro-

ceeding was not under the charter. Is not that very affidavit, there filed, relied on by the plaintiff, and properly, as a ratification of the acknowledgment of service and waiver of notice by Hubbard? But if this writ was at common law, this showing was a nullity, and the plaintiff could derive no benefit from it.

Counsel refer to the form of the judgment rendered in this case, to show that this was not understood to be a proceeding under the charter. What is it? A general judgment against the bank only, and not against the stockholders. An examination of the 17th section, which I have quoted at length, will show, that the judgment is in strict conformity with the statute, and could not have been entered up otherwise than as it is. How the stockholders are to be charged in execution upon this judgment, it is not for us to say. It may be by *scire facias*; but sufficient unto the day is the evil thereof. We have had trouble enough in times past, to expound these bank charters, and should our lives be spared, we need not expect exemption in time to come.

This suit, then, having been brought under the charter, and no special demand having been alleged or proved, a non-suit should have been awarded in the case.

Judgment reversed.

McDONALD, J. absent.