LAUCHHEIMER & SONS *v.* JACOBS.

1. This was a suit for the recovery of the possession of personal property
by bail in trover, and the direct and circumstantial evidence introduced
was sufficient, upon the point that the allegata and probata must agree,
to carry the case to the jury.

(a) But it was made to appear further, from evidence introduced by the
plaintiffs, that there was in existence a universal custom by which travel-
ing salesmen, at the end of the season, were authorized to sell *samples.*
The evidence upon the existence of such custom was unequivocal and
uncontradicted. This being so, it was in the province of the court to
hold, as a matter of law, that there was such a custom.

(b) And it being made to appear by unequivocal and uncontradicted evi-
dence that the defendant in good faith bought the property sued for, at
the end of the season, from the agent of the plaintiffs, in pursuance of
the universal custom, it was in the province of the court to hold as a
matter of law that the agent had authority to sell, and did sell to the
defendant; and it being thus made to appear from the plaintiff's evi-
dence that the defendant was the owner of the property, the court did
not err by granting a nonsuit.

2. Where a party to a suit calls the opposing party to the stand and ex-
amines him as a witness, it is in the discretion of the court to refuse,
on objection, to prohibit counsel for the party so called from asking
leading questions on cross-examination.

3. Where on the direct examination of a witness the party calling him
propounds a certain question, which is answered, and counsel then pro-
ceeds to examine the witness on other matters and finally yields the
witness to cross-examination by the opposite party, it is in the discre-
tion of the court to refuse to allow the same question to be again pro-
pounded to the witness on the redirect examination, and, unless there
be an abuse of discretion, such refusal will not authorize a reversal of
the judgment of the court. There was no abuse of discretion in this
instance.

4. The manner of examination of witnesses is largely in the discretion of
the court; and it is not an abuse of discretion for the court, in a case
where applicable and in response to repeated requests from counsel, to
instruct a witness that he need not answer a question tending to incrimi-
nate himself, unless he desires to do so.

5. Where, in a suit by bail in trover, the defendant refuses to give a re-
plevy bond to the officer seizing the property, but allows the same to re-

main ih the hands of the officer, and the plaintiffs execute a bond in which the property is described and its value is stated, and the condition is for the forthcoming of the property and the payment of the eventual condemnation-money, and the court, after the grant of a nonsuit in the trover case, enters judgment against the plaintiffs and bondsmen for the value of the property as indicated in the bond, such judgment is not erroneous upon the grounds "that it could not be taken until the matter had been submitted to a jury and the worth of the goods proved, and on the further ground that the bondsmen had not been sued, and judgment could not be entered against them on a replevin bond without first suing them."

Submitted March 3,—Decided August 13, 1906.

Trover. Before Judge Reid. City court of Atlanta. April 27, 1905.

The plaintiffs asserted title to certain personal property consisting of pants, sack-coats, overcoats, and jackets, each being tagged by certain numbers, and alleged that the defendant was in possession thereof. The defendant denied that he was in possession of any property belonging to the plaintiffs, but asserted in his plea that the plaintiffs sued out bail in trover against him for the property sued for, and that, upon the defendant's declining to give bond, the plaintiffs gave bond and took from the custody of the defendant and the sheriff, on October 3, 1903, certain overcoats of the alleged value of $215.50 and certain jackets of the alleged value of $58.50, the plea showing that the numbers on the overcoats and jackets corresponded with the numbers on the overcoats and jackets described in the petition. It was alleged in the plea that the goods so taken were claimed by the plaintiffs, but that in fact they belonged to the defendant. Thereupon a judgment was prayed against the plaintiffs on their bond for the value of the property so taken. The replevy bond given by the plaintiffs was payable to John W. Nelms, sheriff, and recited the value of the property so taken from the defendant at the figures already stated, and obligated the plaintiffs to produce the property or cause the same to be produced to answer the judgment or decree that might be made in the case, and likewise to pay the eventual condemnation-money, whatever it might be. On the trial it was insisted by the plaintiffs that they had established ownership of the goods, by reason of the following facts: They had employed one Lane as a traveling salesman and had delivered to him certain goods to be used as samples. It was provided in the contract of

employment that the samples of goods in the possession of Lane were, and should remain at all times, the property of the plaintiffs and subject to their order. It was shown that the list of goods set out in the petition corresponded to that which was delivered to Lane. Lane testified that they were the same. It was shown that the defendant knew that Lane was the salesman of the plaintiffs, and that he did buy an indefinite amount of goods from Lane, and that the sheriff afterwards took some of them from him. The defendant knew that the goods purchased from Lane were samples, but did not know that they were samples of the plaintiffs. It was shown by the plea of the defendant that the numbers on the overcoats and the numbers on the jackets which the sheriff took, corresponded with the numbers on the overcoats and the numbers on the jackets specified in the petition. It was shown by the evidence, that there was a universal custom of trade to the effect that, at the end of each season, such agents as Lane had authority to sell their samples; that in this case the sale was at the end of the season; and that the goods were bought in good faith as samples. The court granted a nonsuit, and then, upon motion of counsel for the defendant, entered up judgment in favor of the defendant against the plaintiffs on their bond for $274, covering the value of the goods taken by the plaintiffs from the custody of the sheriff. The plaintiffs excepted. They also assigned error on the following rulings:

During the progress of the trial, the plaintiffs introduced the defendant as a witness, and upon cross-examination the court permitted the counsel for the defendant to propound certain questions which were objected to by the plaintiffs upon the ground that they were leading. While interrogating the defendant, counsel for the plaintiffs exhibited to him the list of goods attached to the petition, and asked: "I will ask you again, Mr. Jacobs, if you will swear that you did not receive those goods?" Upon objection by counsel for the defendant, the court refused to allow the question to be answered, upon the ground that the witness had gone into the matter upon direct examination, and had answered that he could not. It appeared from the evidence already delivered by the witness that he had been handed a list of goods set out in the plaintiff's petition, and asked "whether or not they were the goods bought by him from Lane." He stated that he did not know

whether they were the same ones or not, but that he bought several coats and boys' jackets from Mr. Lane. He did not remember how many he bought; whether there were 50, 25, 10, or 5. He did not recollect, except there were several. He could not testify as to the number of coats or jackets, nor what the sheriff did take. He testified that the sheriff took from him a number of overcoats which he purchased from Mr. Lane, and exhibited a memorandum of the goods taken from him by the sheriff, which memorandum was given him by the sheriff. The plaintiffs contend that the court erred in its ruling, upon the ground that the question "had never been asked and the witness had not answered it specifically, but that the witness had avoided giving a specific answer thereto."

J. H. Lane was called as a witness by the plaintiffs, and when he was introduced, counsel for the defendant stated to the court that the defendant was sued for goods purchased from the witness, and that the only theory upon which the plaintiffs could recover would be that the witness was guilty of a crime in selling the goods; and requested the court to instruct the witness that he need not answer any questions which would tend to incriminate himself. The court instructed the witness as requested. During the progress of the examination, the counsel for the defendant several times interrupted and requested the court to instruct the witness that he need not answer any question that would incriminate himself, unless he desired to do so. The plaintiffs contend that the court erred in permitting the interruptions referred to, and in repeating the instructions to the witness as requested.

*Mayson, Hill & McGill* and *George B. Rush,* for plaintiffs.

*Slaton & Phillips,* for defendant.

ATKINSON, J. 1. This is a suit in trover. The question is one involving title to certain personal property. The plaintiffs assert title to certain pants, sack-coats, overcoats, and jackets, set forth in their petition, bearing certain numbers as marks of identification. The burden of proof is upon the plaintiffs to establish their title. It appears that Lane was a traveling salesman of the plaintiffs, and that the plaintiffs, reserving title in themselves, had delivered into the possession of Lane, to be used as samples, the identical goods which are described in the petition. There was no direct evidence as to what disposition Lane made of these goods, except that a part of them were returned to the plaintiffs by him.

But it was shown that Lane sold some indefinite quantity of goods to the defendant, that he was known by the defendant to be the plaintiffs' agent, and that the goods purchased were samples. It was shown by the defendant's answer, that, when the bail-trover proceeding was commenced, the sheriff took from the possession of the defendant a large number of overcoats and a large number of jackets, and that the numbers thereon corresponded with the numbers on the overcoats and jackets described in the plaintiffs' petition. Lane testified that the goods described in the petition were the same as those which had been delivered to him by the plaintiffs. On the question of the probata corresponding with the allegata, the facts and circumstances above enumerated were sufficient to carry the case to the jury.

But it was contended that, though the goods may have been originally the property of the plaintiffs, yet the plaintiffs had placed them in the hands of their agent, who, under a prevailing and universal custom of the trade, at the end of the season had sold them to the defendant, an innocent purchaser, and, for that reason, the plaintiffs should not be allowed to recover them. It is stated in Clark & Skyles on the Law of Agency, § 69: "Proof of the custom and usage in a particular business can not be sufficient, without anything more, to show that the relation of principal and agent exists, but such proof may be material, when the fact of agency is otherwise proved, or admitted, to show what the contract of agency was, and to show the extent of the agent's authority. When the rights, duties, and liabilities as between an acknowledged agent and his principal are in question, or when the authority of an acknowledged agent to do a particular act or make a particular contract is in question, an established custom or usage in the particular business or place may be proved and taken into consideration, either for the purpose of construing the contract of agency as between the parties, or for the purpose of determining the extent of the agent's authority; for, unless expressly excluded, such a custom or usage enters into a contract of agency, as it does into other contracts, and also enters into the authority of the agent as respects persons dealing with him. Of course, as between the parties themselves, and as against persons with notice, the principal may, by his instructions to the agent, exclude customs and usages, however well established. But such secret instructions can

not be set up against persons dealing with the agent without notice of them; for they have a right to assume, in the absence of notice to the contrary, that the agent's authority is in accordance with established customs and usages. . ." See also *Thompson* v. *Douglass,* 64 *Ga.* 57. Applying this rule to the case at bar, it appearing from the evidence that Lane was the agent of the plaintiffs, it is competent to inquire into the universal custom of trade for the purpose of determining what authority Lane had for making a disposition of the personal property in controversy. Only one witness testified on the subject of the custom of trade. His testimony was clear and unequivocal that it was a universal custom that salesmen such as Lane at the end of the season had the right and authority to sell and dispose of samples as was done by Lane in this case. The evidence was itself unequivocal, and there was no contradictory evidence or circumstance sufficient to raise a question of fact for submission to a jury. The testimony upon this point clearly made prima facie proof of such a custom of trade as would give Lane, the agent, the authority to dispose of the goods. Under these circumstances, it was for the court to determine as a matter of law whether or not there was proof of the custom of trade. Had the matter been submitted to a jury, the jury could not have found otherwise, because their verdict would have been contrary to the evidence, and the judge would have been obliged to set it aside because no other conclusion could be drawn from the evidence submitted. It is stated in 22 Enc. Pl. & Pr. 410, that "where the facts and circumstances by which it is sought to establish a usage or custom are undisputed and are such that but one legitimate reasonable conclusion or inference can be drawn, the question whether such usage or custom has been proven is one of law for the court. Under such circumstances it can not be left to the jury to determine whether the usage existed or what operation or force must be given to it." Under this view of the case, the court was authorized to reach the conclusion that Lane, the agent, had authority to make the sale. So, if the property had been ascertained to be the same which the plaintiffs had delivered to Lane, the agent, they can not recover, because it further appears from their own proof that under the universal custom a sale of the goods was made by their agent by due authority. It follows, therefore, that the court did not err in granting a nonsuit.

2. Where a party to a suit calls the opposing party to the stand as a witness, it is within the discretion of the judge to refuse, on objection, to prohibit the counsel for the opposing party from asking leading questions on cross-examination, and the fact that the court allowed the cross-questions complained of in this case does not show such an abuse of discretion as to authorize the grant of a new trial. Civil Code, §§ 5283, 5290; *Cade* v. *Hatcher*, 72 *Ga.* 359.

3. On the direct examination, a list of goods, which was attached to the plaintiffs' petition, was exhibited to the witness, and he was asked the question, "whether or not they were the goods bought by him from Lane?" After he was asked this question, further questions were propounded to him on different lines, and finally he was turned over to the opposite side for cross-examination. After the cross-examination, the party introducing the witness again exhibited the same list of goods to the witness, and said: "I will ask you again, Mr. Jacobs, if you will swear that you did not receive those goods?" As will be seen by mere comparison, the two questions are substantially the same. The witness had answered that he did not know whether or not he had bought any of the goods which were described in the petition, and it was not any abuse of discretion for the court to refuse to allow the same question answered again. If additional questions had been asked tending more thoroughly to sift the information of the witness, the court, with some profit, might have allowed them answered; but no additional question was propounded, and we can not assume what other, if any, question was desired to be propounded, and can not reverse the judgment of the court below upon a ruling which was not made. Again, if the defendant had answered that he had bought from Lane the identical goods which were described in the petition, that would not have helped the plaintiffs, because the case really turned against the plaintiffs, not for the want of proper identification of the goods, but on account of the prevailing universal custom already discussed.

4. The manner of examination of witnesses is largely in the discretion of the court, and it is not reversible error for the court to allow counsel, during the examination of a witness, to repeatedly request the court to instruct the witness, nor for the court to so

instruct the witness, that he need not answer incriminating ques-tions unless he desires to do so.

5. In the bill of exceptions the judgment of the court rendered against the plaintiffs and their bondsmen for the value of the prop-erty replevied by the plaintiffs was excepted to "on the ground that it could not be taken until the matter had been submitted to a jury and the worth of the goods proved, and on the further ground that the bondsmen had not been sued, and judgment could not be entered against them on a replevin bond without first suing them." There were no other exceptions to that judgment. These excep-tions were not well taken. There was no issue to be presented to a jury. The bond which the plaintiffs made specified the articles which were taken and the value thereof. The judgment of the court was merely upon the uncontradicted state of facts as pre-sented by the plaintiffs themselves. It was not necessary to insti-tute a separate suit against the bondsmen. See, in this connection, *Thomas* v. *Price*, 88 *Ga.* 533; *Waldrop* v. *Wolff*, 114 *Ga.* 620.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*