11192, 11216.   WILLIAMS *et al. v.* MITCHEM; and *vice versa.*

1. As bail-trover lies only to recover personalty, such an action is not maintainable to recover ungathered crops, whether mature or immature, since, under the law of this State, crops not detached from the soil are realty.

(a) Moreover, there was no such conversion shown by the evidence in this case as to authorize a recovery.

2. Where a plaintiff in bail-trover replevies the property in controversy, on the defendant's failure to do so, and suffers nonsuit on the trial of the case, the defendant may enter up judgment against the plaintiff and the sureties on his bond for the value of the property; and if the defendant is content with the value stated in the plaintiff's affidavit to obtain bail, no further proof or assessment of value is necessary.

DECIDED APRIL 8, 1920.

(Certiorari was granted by the Supreme Court).

Trover; from city court of Morgan — Judge Miller. November 5, 1919.

*C. J. Taylor, R. R. Jones,* for plaintiff.

*B. W. Fortson,* for defendant.

SMITH, J.   T. J. Williams and Y. D. McCollum brought an action   of trover against C. E. Mitchem to recover certain described crops, not detached from the soil, alleged to be of the value of $10,000.   The plaintiffs, at the time of filing their trover suit, also filed an affidavit to obtain bail.   The defendant failed to give bond, and the plaintiffs, exercising their statutory right, gave the required bond, took possession of the crops, and gathered them.   The crops were all matured, but were in the fields ungathered.   The trial of the trover action resulted in a nonsuit, and the court, upon motion of defendant's counsel, entered

judgment against the plaintiffs and the sureties on their bond for the sworn value of the property as set out in the bail affidavit made by the plaintiffs, with interest from the date of the conversion. The plaintiffs excepted to the judgment of nonsuit and to the judgment on the bond, and the case was duly brought to this court for review.

What seems to us to be the main and controlling question in the case is whether or not bail-trover will lie to recover matured but ungathered crops. The fact that this question is not argued or referred to in the briefs of counsel does not, of course, preclude us from deciding the case upon this theory, for this court is not concerned with the reasons given for or against the judgment of nonsuit, but with the correctness of that ruling.

In determining whether trover lies, there is often much confusion as to whether the property in question is personalty or realty; and different conclusions have been reached by text-writers and appellate courts in determining whether ungathered crops are personalty or realty. Since, however, no good purpose would be served by citing or discussing cases from States other than Georgia on this subject, and certainly it would be impracticable to try to reconcile the many decisions, both English and American, in which this question has been dealt with, we will confine our discussion to the law of this State relating to the classification of crops not detached from the soil.

In order to avoid possible confusion, we deem it necessary to state at the outset that it is wholly immaterial whether the crops in this case were growing or matured, for the Supreme Court has held in the recent case of *Newton County* v. *Boyd,* 148 *Ga.* 761 (98 S. E. 347), that "A crop of corn not detached from the soil, whether mature or immature, is a part of the realty, and passes by sale of the land without contractual reservation of the crop." Section 3617 of the Civil Code defines realty as follows: "Realty or real estate includes all lands and the buildings thereon, and all things permanently attached to either, *or any interest therein or issuing out of or dependent thereon.*" With this definition before it (Civil Code of 1882, § 2218), the Supreme Court in the case of *Coody* v. *Gress Lumber Co.,* 82 *Ga.* 793 (10 S. E. 218), held that trees growing upon land were a part of the realty; and that, under the statute of frauds, a sale of them must be in writ-

ing. In *Frost* v. *Render,* 65 *Ga.* 15, it appears that a sheriff sold under execution land upon which were growing crops, and it was there held that "A levy being on certain land as the property of the defendant in fi. fa., a sale under such levy carries with it the crops growing on the land, and the sheriff cannot limit the sale by an announcement that the rent of the current year is reserved." That holding was based on the principle that the law considers growing crops part and parcel of the land itself. Again, we find that in the early case of *Pitts* v. *Hendrix,* 6 *Ga.* 452, it was decided that "A growing crop of corn, after it is laid by, and before maturity, passes to the purchaser of the land." That case was cited and followed in *Ferguson* v. *Hardy,* 59 *Ga.* 758, wherein the question arose as to whether the title to crops growing on lands sold under execution passes to the purchaser as against the defendant in fi. fa. In the case of *Dollar* v. *Roddenbery,* 97 *Ga.* 148 (25 S. E. 410), it was held that a purchaser of lands did not acquire title as against a tenant who planted certain crops on the land, and whose estate was suddenly terminated by the sale of the lands. That decision was based upon the common-law doctrine that the tenant was entitled to the crops as "emblements," and it was unnecessary to decide whether the crops were to be considered as personalty or realty, for no greater interest than the landlord had therein could be sold as his property, and of course the purchaser got only that which was in fact sold. In a contest between a judgment creditor of a tenant and one who claimed cotton levied on, by virtue of prior purchase from the tenant of his unmatured crops, and who had accordingly entered upon the land, cultivated the crops, and gathered them when ripe, the Supreme Court said: "Before maturity, the crops only constitute an element of value, and are not themselves distinct chattels. We know of no ruling to the contrary by this court." In that case the case of *Pitts* v. *Hendrix,* supra, was cited with approval.

Another case which bears somewhat upon the subject under consideration is that of *Hamilton* v. *State,* 94 *Ga.* 770 (21 S. E. 995), wherein the accused was charged with having fraudulently sold and disposed of personal property upon which she had previously given a mortgage. The point raised was that a mortgage given upon a growing crop could not properly be treated as a

mortgage upon personalty; and the Supreme Court, in dealing with this question, drew the distinction between growths that are fructus naturales and those designated as fructus industriales. However, what was said as to this distinction was merely obiter, for, as will be seen from the concluding remarks of the opinion then delivered, the court rested its decision not upon the character of the crops when mortgaged, but upon the ground that if the accused fraudulently disposed of them after maturity, so that they were removed from the land and carried beyond the reach of the mortgagee, the offense with which she was charged would unquestionably be complete. Therefore in that case it was simply held that, irrespective of whether the crops should be considered as personalty while yet immature and growing in the field, "the crop in question being personalty when sold and being then subject to the mortgage, it does not matter whether it was personalty or not at the time it was mortgaged." As far as we have been able to find, there is no decision of our Supreme Court which has unqualifiedly approved and adopted as sound the distinction drawn by many text-books and courts between property that is fructus naturales and that which is fructus industriales. We come now to the case of *Bagley* v. *Columbus So. Ry. Co.*, 98 *Ga.* 626 (25 S. E. 638, 34 L. R. A. 286, 58 Am. St. R. 325), and while in that case it was held merely that "as a general rule unmatured crops growing upon land belonging to the owner of the crops are to be regarded as part and parcel of the land," special attention is called to the very able and thorough opinion of Chief Justice Simmons, which is one of the best discussions to be found anywhere upon this troublesome subject, and one which has been repeatedly referred to by leading text-writers.

Since it seems to be indisputable, from what is said above, that crops not detached from the soil, whether mature or immature, cannot properly be classified as personalty, under the law obtaining in this State, it follows that the plaintiffs in this case could not legally maintain bail-trover to recover ungathered crops. Consequently it cannot be said that the judgment awarding a nonsuit was error.

Moreover, even if the crops in this case were to be considered as personalty, there was no sufficient evidence of a conversion;

of them, and for this additional reason the nonsuit was proper. While it is true the evidence showed a demand and refusal, this was not, under the particular facts of the case, sufficient proof of a conversion, for the uncontradicted evidence established that the plaintiffs went into possession and gathered the crops several months prior to the first of November, whereas the defendant had, under the terms of a valid written contract, the right to purchase at any time before this date the plantation upon which the crops were raised, and in case he exercised this right he became the owner not only of the land, but of all the crops grown thereon. The defendant's option to buy not having expired when the plaintiffs demanded that he surrender possession of the crops, it cannot be said that his refusal to do so amounted to a conversion. In other words, their demand for possession was prematurely made.

2. The nonsuit being proper, the defendant had his choice of one of three remedies, to wit: A judgment (1) for the specific property, or (2) for the market value of the property at the date of the conversion, with the addition of hire or interest, or (3) for the highest proved value of the property between the date of the conversion and the date of the trial, without hire or interest. *Kaufman* v. *Seaboard Air-Line Ry.,* 10 *Ga. App.* 248, 250 (73 S. E. 592); *Barfield Music House* v. *Harris* 20 *Ga. App.* 42 (92 S. E. 402). The defendant took advantage of the second remedy and asked for judgment for the value placed upon the property by the plaintiffs in their affidavit for bail. The court allowed judgment to be entered upon the bond, for the sworn value of the property with interest from the date of the conversion. The plaintiffs excepted to this action of the court, but their exception is, we think, without substantial merit, for, as was said by Judge Powell in the case of *Kaufman* v. *Seaboard Air-Line Ry.,* supra: "The defendant in any of these events may ask for the question of value to be submitted to the jury for assessment; but, if he is content with the value sworn to by the plaintiff in his affidavit for bail, verdict is unnecessary, and he may, upon the sworn admission of the plaintiff as contained in this affidavit, take judgment against the plaintiff and his sureties for the sum stated in the affidavit, with interest thereon." See also, in this connection, *Mallary* v. *Moon,* 130 *Ga.* 591 (61 S. E. 401);

*Block* v. *Tinsley,* 95 *Ga.* 436 (22 S. E. 672); *Thomas* v. *Price,* 88 Ga. 533 (15 S. E. 11); *Hays* v. *Jordan,* 85 *Ga.* 741 (11 S. E. 833); *Jaques* v. *Stewart,* 81 *Ga.* 82 (6 S. E. 815). It is true that there was evidence introduced in behalf of the plaintiffs tending to show that the property in dispute sold for only $5573.06, but we do not deem this testimony sufficient to alter our ruling sustaining the action of the court in permitting defendant to take judgment for $10,000, the amount stated in the bail affidavit to be the value of the property, for, as above indicated, the defendant elected to take a judgment for the market value of the property at the *date* of the conversion, and the evidence as to what the crops sold for relates to the value of the property *after* its conversion by the plaintiffs. Evidence of what crops brought when sold is wholly insufficient to prove what they were worth on a date prior to the sale, for it is a matter of common knowledge that the market value of crops is subject to fluctuation from day to day. The only evidence in the case, therefore, as to the value of the crops at the time of their conversion was that sworn to by the plaintiffs in their bail affidavit, and the court did not err in entering judgment for $10,000, the amount stipulated in the affidavit as the value of the property.

It is contended that the general rule as above stated and upon which our affirmance of the judgment for $10,000 is based does not apply, and would work a grave injustice in this case, because the defendant had at most only a part interest in the crops in controversy; but as was said by Judge Powell in the *Kaufman* case, supra, "the rule does apply, and no injustice is done. The plaintiff took the goods from the defendant's possession without having the right to do so. When his lack of right was judicially established, it was obligatory on him, under his replevy bond, to put the property or its value in money back into the defendant's hands. When, under the restitution, the defendant company takes money instead of the property, it will hold the money on terms like those on which it held the property. The defendant will hold the money not for its own ultimate benefit, but for its protection." Therefore in the present case the plaintiffs may take such steps in law or equity as shall be necessary to give adequate protection to all parties concerned. The only real ultimate hardship, if any, on the plaintiffs is that they will have

to pay the costs; and this hardship they imposed upon themselves by mistaking their remedy.

*Judgment on the main bill of exceptions affirmed; cross-bill dismissed. Jenkins, P. J., and Stephens, J., concur.*