33364. POSEY *et al. v.* FROST MOTOR COMPANY *et al.*

DECIDED MAY 25, 1951.

*Judson Andrews, T. Blake Jackson, Louis M. Tatham,* for plaintiffs.

*Albert E. Mayer,* for defendants.

WORRILL, J.  Leon Posey and J. E. Linn, trading as Southern States Equipment Company brought a bail-trover action against Frost Motor Company, Jack Frost and Robert Haber to recover possession of a certain produce van alleged to be of the value of $1617.36.  The defendants filed an answer denying the material allegations of the petition, but failed to replevy the property.  The plaintiffs exercised that privilege, gave bond and took possession of the property.  Upon the trial the court granted a nonsuit and thereafter, on the same day, entered judgment on the plaintiff's replevy bond in favor of the defendants for $1617.36 and interest.  Thereafter the plaintiffs made a motion to vacate and set aside the judgment of nonsuit, but did not assign error therein or elsewhere upon the judgment for the defendants for $1617.36.  The trial court overruled that motion, and the sole exception here is to that order.

■  In this court a motion has been made to dismiss the writ of error on the ground that the judgment entered in favor of the defendants for $1617.36 was not excepted to, it being contended that it was the final judgment in the case.  This question, as applied to a trover action involves considerations which at

first might lead one to fall into confusion. For instance, in *Block* v. *Tinsley,* 95 *Ga.* 436 (22 S. E. 672), the Supreme Court said that "the question of title to the property originally in dispute was forever settled between these parties" by that judgment unexcepted to. Upon the second appearance of the case before the Supreme Court (*Tinsley* v. *Block,* 98 *Ga.* 243, 25 S. E. 429), and upon the accuracy of this statement being questioned, the court said that the challenge was well founded and that it did not mean to be so understood. In a very enlightening discussion the court held that where in a trover action, as here, the trial court, after granting a nonsuit, enters judgment for the defendants for the amount fixed by the plaintiffs in their affidavit to secure bail, such judgment unexcepted to forever settles the question of the *right of possession of the property* as between the parties, but did not adjudicate the question of title as raised by the trover action. The situation here is so unusual and the discussion in the latter case so informative, that we take the liberty of setting out below in extenso a quotation from that opinion.

"It cannot be denied that, as a general rule, a judgment of nonsuit does not conclude the plaintiff upon the merits of his cause of action. The Code expressly provides, that if a plaintiff shall be nonsuited, and shall recommence his action within a given time, 'such renewed case shall stand upon the same footing, as to limitation, with the original case.' § 2932. This necessarily implies that a judgment of nonsuit is not a final adjudication of the case against the plaintiff; for if it were, there could be no renewal of the action at any time, and the question of limitation would have nothing to do with the matter. Is there any sound or valid reason why the right to renew an action of bail trover, in which a nonsuit has been granted, should not rest upon the same footing as the right of renewal in other cases? We cannot see why there should, in principle, be any difference; and in a case where no complication arose because of a replevy of the property in dispute by the plaintiffs, followed by a money judgment in lieu of a judgment of restitution in favor of the defendant, there would be absolutely no difficulty in holding that the plaintiffs could recommence their action with all their original rights preserved. That there was such a re-

plevy by the plaintiffs and such a judgment in favor of the defendant cannot, we are convinced, change the rule of law which would otherwise be applicable. If, instead of the money judgment, Mrs. Tinsley had obtained a judgment of restitution, and the property had been actually returned to her possession, there would be perfectly plain sailing. The original status of the parties as they stood before the first action was brought would have been restored, and it could not have been seriously denied that the Blocks had a perfect right to renew their suit. The fact that Mrs. Tinsley elected to take, and actually obtained, a money judgment, does not alter the principle involved. That judgment, unless reversed or set aside conclusively binds the Blocks, in so far as it adjudicated their liability to pay Mrs. Tinsley the amount for which it was rendered; but it adjudicated nothing as to the merits of their original cause of action, founded upon the alleged conversion by her of their property. In fact, that judgment was predicated upon a breach of the contract embraced in the replevy bond, by which the Blocks undertook to restore the property in the event they failed to recover in the identical pending action in connection with which this bond was given. By taking the money judgment Mrs. Tinsley relinquished all right to subsequent possession of the property, and the question as to the right of present possession is no longer open. But the question of title put in issue by the plaintiffs' original action has never been finally passed upon or adjudicated; nor has it yet been judicially ascertained whether or not Mrs. Tinsley, in the first instance, wrongfully converted to her own use property which really belonged to the Blocks."

The court further said that the real meaning of its holding upon the first appearance of that case before the court was that "the nonsuit terminated all right of immediate possession which The Blocks had acquired by giving the bond; and if they thereupon failed to restore the possession to the defendant, they subjected themselves to suit upon their bond, and acted at their peril in surrendering the property to any one else. . . We really did not mean, nor wish to be understood as holding, that 'the question of title to the property originally in dispute was forever settled between the parties.' On the contrary, we intended merely to say that there was no longer any occasion for

controversy between the parties as to possession of the property, and that the payment by the Blocks of the money judgment would practically result in their thereafter becoming the owners of the property, under a sort of enforced purchase, independently of whether, in point of fact, they had any previous title thereto or not. . . It was quite beyond the intention of the writer to convey the impression that, in our opinion, their right to show that the original title had been previously vested in them, was cut off or affected by the judgment in Mrs. Tinsley's favor.

"When the case is tried again, the plaintiffs must, in order to recover, show that there was in the first instance an unlawful and wrongful conversion of their property. If they succeed in doing this, the measure of damages will be the value of the property and its hire, or whatever damages may have been actually sustained in consequence of such conversion. The defendant cannot insist upon the position that the value of the property is not an element of damages, on the ground that the Blocks already have the property. Their present possession of the property is explained by the fact that, as Mrs. Tinsley elected to take a money judgment in her suit upon their replevy bond, they were practically compelled to buy the property from her. In other words, the Blocks have fully paid or are liable to pay, for the possession they now hold.

"It must result as a necessary conclusion from the foregoing, that the plaintiffs will not be under the necessity of proving any conversion subsequent to the granting of the first nonsuit. Their present right of action being predicated upon the original conversion, it will be sufficient, so far as this element of the case is concerned, if they prove a conversion prior to the bringing of their first action."

Undoubtedly, where as here, the defendants failed to give the bond and replevy the property involved after it was seized by the sheriff, and where the plaintiffs exercised that right, taking possession of the property after giving bond, and where thereafter the plaintiffs were nonsuited, it was proper for the trial court to enter up judgment for the defendants on the plaintiffs' forthcoming bond for the value of the property. A proper measure of such value may be that value as set forth in the plain-

34

tiffs' affidavit to obtain bail. *Marshall* v. *Livingston*, 77 *Ga.* 21 (2) ; *Smith Bros. & Co.* v. *Adams*, 79 *Ga.* 802 (5 S. E. 242) ; *Thomas* v. *Price*, 88 *Ga.* 533 (1) (15 S. E. 11) ; *Block* v. *Tinsley*, 95 *Ga.* 436 (supra) ; *Lauchheimer & Sons* v. *Jacobs*, 126 *Ga.* 261 (5) (55 S. E. 55) ; *Bank of Blakely* v. *Cobb*, 5 *Ga. App.* 289 (63 S. E. 24) ; *Trammell* v. *Georgia Engineering & Construction Co.*, 8 *Ga. App.* 501 (1) (69 S. E. 921) ; *Kaufman* v. *Seaboard Air Line Ry.*, 10 *Ga. App.* 248 (2) (73 S. E. 592) ; *Williams* v. *Mitchem*, 25 *Ga. App.* 138 (2) (102 S. E. 870).

Since, under the ruling in the *Tinsley* case, supra, it was not necessary to except to the money judgment in order to bring to this court the question of title as originally alleged by the plaintiffs, and since the judgment of nonsuit is a final judgment on which error may be assigned (*Walker* v. *Central of Georgia Ry. Co.* 47 *Ga. App.* 240 (5), 50, 170 S. E. 258), it follows that the motion to dismiss the writ of error is without merit, and is denied.

■ The plaintiffs' evidence showed substantially that they sold the property in question under a retention-of-title contract to one Hooks under which Hooks paid $300 down and was to pay a certain sum each month until the balance of the purchase price of $2500 was paid; that this contract was entered into on March 21, 1949; that Hooks got behind in his payments and the plaintiffs found the property in the possession of the defendants; that the plaintiffs demanded possession of the property from the defendants but it was refused; that before this proceeding was instituted to recover the property in question the plaintiffs assigned the note and retention-of-title contract executed by Hooks to the South Side Atlanta Bank in the following form: "Georgia, Fulton County. June 20, 1949. For value received we hereby set over, sell and assign to South Side Atlanta Bank all our rights, interest and title to within retainer title contract, with recourse on us or either of us. Southern States Equipment Company by J. E. Linn, partner"; that this assignment was made as security for a loan from the said South Side Atlanta Bank to the plaintiffs; that before this action was instituted the plaintiffs repaid the loan and the contract and note had been returned to them, was actually in their possession when suit was filed, and on the trial, though no assignment

back from the bank to them was entered on the instrument or elsewhere.

We recognize the rule that one who has parted with the legal title to property cannot maintain trover to recover its possession. The question in this case, however, is whether the evidence showing the plaintiffs in possession of the retention-of-title contract and note with their indorsement in full to a third party thereon and uncanceled, demands a finding that they have parted with the title to the instrument and thus to the property in question so that trover in their names would not lie. While the instrument here involved is not a negotiable instrument, but merely a chose in action, we think that a solution to the question may be had by reference to a rule originating in the law of negotiable instruments, to wit: "The payee of a promissory note, in possession of the same, is presumed to own it, although his indorsement thereon, in full or in blank, may stand uncanceled. He may sue upon such note, and his title to the same can not be inquired into, unless it be necessary for the protection of the defendant or to let in the defense which he seeks to make." *Bomar* v. *Equitable Mortgage Co.,* 111 *Ga.* 143 (36 S. E. 601) ; *Carolina Locust Pin & Mica Co.* v. *Chattanooga Machinery Co.,* 3 *Ga. App.* 732 (3) (60 S. E. 375) ; *Bell* v. *Whitestone,* 18 *Ga. App.* 536 (89 S. E. 1050) ; *Baggs-Langford Motor Co.* v. *Moore & Sons,* 36 *Ga. App.* 788 (3) (138 S. E. 256) ; *State of Georgia* v. *Industrial Acceptance Corp.,* 37 *Ga. App.* 253 (1) (139 S. E. 577) ; *Staples* v. *Heaton,* 55 *Ga. App.* 495 (190 S. E. 420). In *Globe &c. Ins. Co.* v. *Jewell-Loudermilk Co.,* 36 *Ga. App.* 538 (8) (137 S. E. 286), it was held that "An assignor of a chose in action, who has assigned the legal title thereto to another as security for a debt, has such an interest therein that he may maintain a suit thereon in his own name. *Wheeler* v. *Stapleton,* 99 *Ga.* 731 (27 S. E. 724)." While the rule stated seems to have originated in negotiable instruments law, it nevertheless has been indiscriminately applied to negotiable instruments and choses in action alike. It was applied to a retention-of-title contract in *State of Georgia* v. *Industrial Acceptance Corp.,* supra.

In the *Bomar* case the Supreme Court expressly refused to follow the ruling in *Southern Bank of Georgia* v. *Mechanics Sav-*

*ings Bank*, 27 *Ga.* 252(2), and held that, "Although plaintiff's name may be on the back of the note sued on, he may recover against the maker, as the law will presume, in the absence of proof to the contrary, that an indorsement by him was never completed by delivery, or if he had delivered it so indorsed, that he had taken it up, and was again the legal holder or indorsee." We can see no reason why in principle these rules should not apply to the instant case. Under the plaintiffs' evidence the indorsement was entered on the instrument merely to pledge it as security for a loan from the South Side Atlanta Bank, and the evidence clearly shows that the plaintiffs had repaid the loan and had thereby legally regained possession of the note. Nothing in the evidence controverts this testimony of the plaintiffs. Under such evidence the plaintiffs were the legal owners of the instrument and of any rights thereunder.

What is meant by the clause, "unless it be necessary for the protection of the defendant or to let in the defense which he seeks to make," as used in the statement of the general rule referred to above? We think that this means that the defendant may show affirmatively that the title to the instrument sued on is not in the plaintiff when such fact materially affects the plaintiff's right to recover against the defendant. Taken in connection with what precedes it, it necessarily means that the mere fact of the assignment or indorsement by the plaintiff on the face of the instrument is not conclusive evidence that title to the instrument is not in the plaintiff where the plaintiff is in possession of the instrument. This seems to be particularly important where the evidence shows that the defendant is not a party to the instrument but merely holds the property in question as a stranger to the transaction. If, for example, the defendants can show by competent evidence that the plaintiffs do not have the legal title to the instrument, that title thereto is in another, and that the defendants held possession of the property under such other, it would be competent for them to do so.

So far as appears from the record, however, the defendants are strangers to the transaction between Hooks and the plaintiffs and strangers to the title to the property in question. If in fact the plaintiffs have no title to the property in question such fact is a defensive matter which the defendants may show by

competent evidence on their behalf. The plaintiffs' evidence as it stands, however, shows prima fácie title in the plaintiffs and right in them to maintain the action, and the trial court erred in granting a nonsuit.

*Judgment reversed. Sutton, C.J., and Felton, J., concur.*