THE CENTRAL RAILROAD AND BANKING COMPANY *vs.* SIMS.

1  *The Gainesville J. & S. R. R. vs. Wall*, 75 *Ga.* 282, has no application to the present case, and its applicability should not have been referred to the jury. The authorities in point is a question for the court.

2. Where a gravel or repair train is managed as usual, and the jerk

complained of is only such as would be expected to occur on a train of that character in doing its work, the employés engaged on it or attached to it take the risk as incident to the service, and if injured by the jerk, cannot recover of the company.

May 28, 1888.

Charge of court. Railroads. Damages. Negligence. Master and servant. Before Judge HARRIS. City court of Macon. December term, 1887.

James Sims sued the railroad company for personal injuries sustained by him on December 1, 1885, by the negligent running of its train on which plaintiff was employed to work. The defendant pleaded the general issue.

On the trial, the following evidence was introduced by plaintiff: He swore that, at the time of the injury, he was working for the railroad company on a gravel-train, and was hurt in Sumter county near Smithville. He was employed as a train-hand, to do such work as was required of him. He had been told by his boss that, when the train had a long run to make and he had not had time to cook, he had better go back to the cab and cook his rations. The train stopped at a wood-rack, and plaintiff and other hands put wood on the tender. He got on the train just as it started from the rack, and started back to the cab, taking with him a small pine splinter from the tender to kindle a fire with. Between him and the cab was a flat-car, on the end of which nearest to him was a tool-chest, which extended across the end of the car, leaving a space of about a foot at one side of the chest for a passage-way around it. It was customary for the hands to either go around it or climb over it. The cars between this chest and the tender were flat-cars. By the time plaintiff nearly reached this chest the train was running very fast, and he stopped. The train then slackened up a little, and plaintiff started to step across from the car he was on to the car the chest was on, reaching out to catch hold of the chest to assist him in getting over; and just then the engine

gave the train a big jerk, throwing plaintiff between the cars and knocking him to one side of the track. He had had considerable experience in working on the railroad; had not been on this particular train very long. He had been required to work while the train was running, sometimes shoveling off dirt when it was moving slowly. The jerk must have been caused by the engineer's doubling his steam. Plaintiff suffered a great deal; his foot was mashed to pieces; and he lay in bed about three months and was confined to the house on crutches two months more. He still suffers from the hurt; his capacity to labor has been decreased to half. While working for the railroad, he received fifty-five cents a day and his board, the latter being worth about $5 per month. He was taking good care of himself when hurt. It was in October. A number of other men were employed on the train, and none of them were jerked off. Some were lying down close to the engine, some sitting on the platform-cars, and one was going back with plaintiff; he went ahead of plaintiff and got over before the jerk came. Plaintiff had not been told that when the nights were longer than the days, he must cook at night, and his boss did not try to keep him out of the cab. There is a great deal of risk in walking on a train when in motion, and trains of that kind will jerk sometimes. He had been used to working and walking on the train when it was in motion; had to do it often; it was part of his work.

The defendant introduced the engineer of the train, who testified as follows: It was the custom of the hands to step from the wood-rack to the train, and some of them go back to the cab. On the occasion in question, the train started off reasonably slowly. Witness saw plaintiff go off the engine with a big load of wood in his arms or on his shoulder; did not see him when he fell. When the train was waved down, it was going eight or nine miles an hour. Witness used all the care he could; did not jerk the train, but pulled off very slowly; and when the hands all

got up, he increased the speed. They all stepped on the first flat-car from the engine. There was no jerk, unless a very slight one. Of course when he started, there was some jerk, but the throttle of the engine worked nicely and he moved off gradually and gently. There is no danger in moving about the train if it is moving along, or in walking along the cars; but is the conductor's order to sit down and keep quiet. When a man is accustomed to walk that way, it is safer than when he is unaccustomed to do so. In the moving of a train, when the hands are working, a man can walk all that is necessary without danger, but he does this at his own risk. If the man is careful he will be safe. It was gross carelessness that plaintiff fell.

The conductor of the train swore: He did not see plaintiff fall. His attention was called to the matter by the negroes waving down the train. After the hands put the wood on the tender, it was their duty to get on the platform-cars and sit down. It was witness's rule that they should sit on the flat-cars, as he wanted them out of the cabs. After plaintiff was hurt, he was found lying about ninety feet from the wood-rack, and there were three sticks of pine wood about two feet long lying beside him. The speed of the train could not have been more than two miles an hour when plaintiff fell. There was a little jerking, but nothing unusual. The space between the tool-chest and the edge of the car is about ten or twelve inches. Witness never gave plaintiff any orders about cooking his meals. His rules were that, when the nights were longer than the days, the hands should cook at night; if the days were longer, he gave them time to cook; if the nights were longer, he made them cook before he called them in the morning; and after being called out, they had no business to be back in the cabs. The hands got their breakfast that morning before he called them to work at Smithville. The plaintiff was up at four o'clock A. M.; he had been on the train about a month, and witness's rules

had been observed during that time, and had been observed by plaintiff up to the time of the injury. There is no danger in sitting down on the cars, but there is danger of falling off in standing or walking on the train. There were rocks and jerks from irregularities in the track. In stepping from one car to another, there is great danger "when you come to leap over." The passage by the tool-chest was still more dangerous, but it was safe if one had two hands to catch himself with; but with a load of wood on his shoulder, the plaintiff had no chance to catch on. Everything was done in the way of care by the engineer that could have been done. Witness has walked about on the cars when in motion a thousand times; and there is no danger in it when a man takes care of himself. The plaintiff and the wood were piled together in a ditch, and it was evident he had it on his shoulder when he fell. The engineer was pulling out easily. It is possible that a jerk would throw a man off. The jerk is more liable to occur when the train is starting, but if the engine is pulling out slowly there is less danger of a jerk. When the injury happened, the other hands were sitting on the platform-cars. Afterwards the conductor made an effort to find some one who saw plaintiff fall, but failed.

In rebuttal, the plaintiff testified that he had only a pine splinter in his hand when hurt; that some of the hands had gone into the cab, some were on the flat-cars and some on the ground, who stepped into the cab as it came by; that he did not know, at the time of the trial, where the man who was with him when hurt was; that that was the man who had the load of wood, and he went ahead and the last plaintiff saw of him was when he went into the cab with the wood he got from the rack to cook with.

The jury found for the plaintiff $1,275. The defendant moved for a new trial on the following among other grounds :

(6) Because the court charged as follows : " Where it

v 80-48

was shown that a cow was killed by a train, the railroad ·company should have produced all the witnesses present to show that the company was not at fault. Where the ·engineer and.fireman were always present on the engine, but only the former was sworn as a witness, and the absence of the latter was not accounted for, this was a circumstance from which the jury might infer that, had the other witness been introduced, his testimony might have shown negligence on the part of the company, and the verdict against the company was not without evidence to support it." And then proceeded as follows: " You may take that law into consideration, if you find it applicable to this case; and I charge you that it is the law. If you find any of the facts in this case suited to this law, you can apply it and judge for yourselves."

(7)–(8) Because the verdict was contrary to law and evidence.

The motion was overruled; and the defendant excepted.

Lyon & Estes, for plaintiff in error.

M. G. Bayne, contra.

Bleckley, Chief Justice.

1. It was certainly error to give in charge to the jury the rule taken from. *Gainesville, Jefferson & Southern Railroad vs. Wall*, 75 *Ga.* 282, to the effect that when a cow is. killed, both the fireman and the engineer must testify, in order to exculpate the railroad company. That principle had no application to the present case, and the judge seems to have found difficulty in discerning the application for himself, and referred the question to the jury, in all of which we think he was incorrect.

2. The ground of the motion for a new trial that the verdict was contrary to evidence and without evidence to support it, we think was well-taken. The plaintiff below was an employé in the service of the company, upon a

gravel-train, and was at the place where he had engaged to work; and the train being in motion there was a jerk, and in attempting to step from one car to another, or when about to make the attempt, he was thrown from the car. We think that such jerks, upon a train of that character, must be expected to occur, and that the risk of employment embraces them. It would certainly be impracticable to keep up the repairs of a railroad upon any very strict rule in regard to jerks in the movement of the construction trains. Employés upon such trains must incur these risks; they are apparently incident to the business. And we think that, under the evidence in this case, there was nothing unusual in the management of this train, and that the injury that resulted to the plaintiff below was simply an occurrence that took place in the ordinary course of business; and that there can be no recovery upon the evidence as we find it in the record.

The ruling of these two grounds is enough to dispose of this case for the present. There are some other objections to the charge of the court, which we do not deem it material now to review; because the charge, if the case should be tried again, may be different from what it was on the former trial. The judgment refusing the motion for new trial is overruled.

Judgment reversed.