7928.  MOORE v. DIXIE FIRE INSURANCE COMPANY.

Under the evidence submitted in this case, it was a question for the jury
whether the insurer had absolutely refused to pay the loss under the
policy of fire insurance, or had made a bona fide attempt to adjust it.

DECIDED APRIL 25, 1917.

Action on insurance policy; from city court of Richmond county
—Judge Black.  September 29, 1916.

C. H. & R. S. Cohen, for plaintiff.

Barrett & Hull, for defendant.

JENKINS, J.  The record of this case shows that the plaintiff
insured a certain boat-house and its contents in the sum of $500,
under a policy of fire insurance issued by the defendant company,
and that the property insured was destroyed by fire on September
23, 1914.  On a suit upon the policy a nonsuit was granted.  The
errors complained of are:  (1) that the court erred in granting
a nonsuit; (2) that after the court had orally announced that a
nonsuit was granted, the court erred in not permitting the plaintiff
to again testify, and in not allowing plaintiff's son to testify, as to
the absolute refusal to pay on the part of the insurance company.
The sole reason for granting the nonsuit, as shown by the certifi-
cate of the trial judge, was the plaintiff's failure to show such ab-
solute refusal to pay, after having failed to furnish the proofs of
loss as required by the terms of the policy.  The plaintiff admits,
in his petition, that such proofs had not been made, and alleged
therein that they had been waived by the insurance company by
its absolute refusal to pay.

The only witness whose evidence related to these questions was
the plaintiff himself.  His testimony on this question, on direct
examination, was as follows:  "The adjuster did appear.  I don't
remember the exact time, but within a week or so afterwards.  The
adjuster saw Jesse, my boy, about it, and then I went to see Mr.
Mell, the adjuster of the Dixie Fire Insurance Company.  I had
furnished an itemized list of what I had in the boat-house, and they
took that list and figured it out and offered me $425, or $424 and
a few cents, for the boat-house and contents.  I told him that I
would not accept $425; that my policy called for $500; that I had
in the boat-house around $800, that is, in the boat-house and ma-
terial that was in it, and I had paid my insurance premiums on
$500, and I expected $500, and would not accept $425.  He then

told me that was all they could offer, that they did not have to pay anything; that I didn't own the land on which the boat-house was built, and they were not liable under the policy, because it was on leased land, and they wouldn't pay anything. I then had two or three letter correspondence with the company, and couldn't get any satisfaction or arrangement with them, and turned it over to Mr. Cohen to handle." On cross-examination this witness testified: "Under these figures Mr. Mell uses, the total amount of my loss was $424 and some cents, and he offered to pay me that amount and I declined to accept it. He told me that they were not liable anyhow, but still offered to pay me $424 and odd cents. That is correct. He said, under the policy the company was not liable for anything. When I·wrote to the president of the insurance company I recognized that they were then willing to pay me $425, or within a few cents of that amount; that was also true when the letter was written to me by Mr. Bush, the president of the insurance company; the offer was not withdrawn at any time. I went up to see Mr. Mell. This memorandum was given to my son by Mr. Mell. He brought it home to me and I said, 'Is that the way they want to settle the policy?' Then I went to see Mr. Mell and asked him why he depreciated the value of the stuff; that I would not accept any depreciation; that I had paid for $500 of insurance and expected $500 insurance, and wouldn't accept anything less than $500 insurance, unless the company would replace my boat-house just as it was, which I would rather have than the money. He then told me they could not pay this amount. I don't remember the exact figures, but to the best of my recollection it was $424 and some few cents that his company would pay, but that they wouldn't pay anything more than that; that they were not liable for anything, but would pay that much just to settle it, and I refused it." The record of the case discloses that the insurance company, in a letter to the attorneys of the plaintiff, written as late as December 10, 1914, while specifically stating that it neither admitted nor denied its legal liability under the policy, yet in effect recognized the continuance of its previous offer, and only insisted upon its contention of depreciation, and that the payment be limited accordingly.

The bill·of exceptions shows that after the evidence of the plaintiff was in and he had announced closed, the defendant moved to

nonsuit the said cause. Thereupon, after the court had announced, "a nonsuit is granted," but before any written judgment to that effect had been entered, the plaintiff asked leave to introduce additional testimony of the plaintiff, Mr. Owen O. Moore, and testimony of Mr. Jesse Moore, to prove that Mr. Owen O. Moore's reason for not furnishing proof of loss in accordance with the requirements of the policy was that the defendant had waived the proof of loss by its absolute refusal to pay this loss under the policy sued on. The plaintiff offered to prove by his son and agent, Mr. Jesse Moore, the following: (1) that the Dixie Fire Insurance Company, through its legal representative, refused payment, on the ground that the property upon which the building was located was not the property of Mr. Owen O. Moore, and absolutely refused to make payment. The plaintiff offered to prove by Mr. Jesse Moore and Mr. Owen O. Moore the following: (2) that the company or its representatives absolutely refused to pay, and said "We won't pay you anything," or words to that effect,—an absolute refusal to pay. Plaintiff also offered to prove by Mr. Jesse Moore and Mr. Owen O. Moore the following: (3) that on one, two, or three occasions Mr. Mell, the adjuster, refused to pay this policy. The presiding judge, in his certificate, states that the reason for his refusal to reopen the case in order to allow Jesse Moore to testify, after announcing that he would grant a nonsuit, was that "it appeared from the evidence that he was not the owner of the property destroyed by fire, and, subsequent to any conversation between Jesse Moore and Mr. Mell, the representative of the insurance company, the evidence, both oral and documentary, showed the insurance company offered to pay Owen O. Moore, the plaintiff and owner of the property, four hundred and twenty odd dollars in settlement of the loss, and, Owen O. Moore having testified this offer of settlement made him by Mr. Mell as a representative of the insurance company was never withdrawn, he was estopped from testifying that there was an absolute refusal to pay the loss."

1. The stipulations in the policy sued on, which are attached to the petition, require the insured to furnish proof of loss within sixty days after the fire, and, among other things, it is specified that he "shall make a complete inventory of the same [property], stating the quantity and cost of each article, and the amount

claimed thereon, . . the cash value of each item thereof, and the amount of loss thereon." Proofs of loss are primarily intended for the purpose of securing an adjustment between the insured and the company (19 Cyc. 854), and it is in accordance with sound public policy that our law recognizes the right of insurance companies to make such requirements in their contracts. By the Civil Code (1910), § 2490, this right on the part of the insurance companies to prescribe regulations as to notice and preliminary proof of loss is specifically allowed, and it is therein provided that such stipulations must be substantially complied with on the part of the insured, unless such compliance is waived by the insurer's absolute refusal to pay. A reasonable requirement as to the time in which such proof of loss must be made has been recognized by our Supreme Court in the cases of *Southern Fire Insurance Co.* v. *Knight,* 111 *Ga.* 622 (36 S. E. 821, 52 L. R. A. 70, 78 Am. St. R. 216); and *Harp* v. *Fireman's Fund Ins. Co.,* 130 *Ga.* 726 (61 S. E. 704, 14 Ann. Cas. 299). In the cases just cited it appears that the provisions in the contract relating to proof of loss are identical in all respects with those embraced in the policy sued on in the instant case. The first headnote of the decision in the case first cited is as follows: "Where a policy of fire insurance set forth various requirements and conditions, a violation of which by the insured would operate as a forfeiture of the policy, and the same also contained a stipulation requiring the insured to furnish proofs of loss within sixty days after the fire, but did not make failure to do so a ground of forfeiture, and where under the terms of the policy the insurer was not liable to make payment until after sixty days from the receipt of such proofs of loss, the policy further providing that no suit thereon should be brought unless commenced within twelve months after the fire: *Held,* that if the insured furnished the required proofs of loss in time for at least sixty days to elapse between the date upon which they were furnished and the expiration of the twelve months limitation, the policy was not forfeited by a failure to furnish such proofs within sixty days after the fire occurred." There is no contention in the present case, however, over any question relating to the furnishing of proofs, save as to whether or not the necessity therefor had been altogether waived by virtue of the company's absolute refusal to pay. It is the plaintiff's contention that the evidence showed,

and the evidence offered would have shown, that there had been an absolute refusal to pay on the part of the defendant company, at least to such an extent as to make the determination of the question one which the jury should have passed upon.

By the Civil Code, § 5942 (1910), it is provided that "if the plaintiff fails to make out a prima facie case, or if, admitting all the facts proved and all reasonable deductions from them, the plaintiff ought not to recover, a nonsuit will be granted." This statement of the code can hardly be rendered more clear or certain in meaning by words other than those used by the terms of the statute itself; but there have been numerous elucidations of this provision of law, the purport of which might be fairly stated as limiting the right of the trial judge to grant a nonsuit if there is evidence sufficient to authorize the jury to find for the plaintiff, even though the evidence might not so require. *East & West Railroad Co.* v. *Sims,* 80 *Ga.* 807 (6 S. E. 595); *Phillips* v. *Brigham,* 26 *Ga.* 617 (71 Am. D. 227); *Barnett* v. *Terry,* 42 *Ga.* 283 (3); *Dyson* v. *Beckam,* 35 *Ga.* 132; *Neff* v. *Broom,* 70 *Ga.* 256; *Burnam* v. *DeVaughn,* 65 *Ga.* 310; *Davis* v. *Kent,* 97 *Ga.* 275 (23 S. E. 88); *Standard Cotton Mills* v. *Cheatham,* 125 *Ga.* 649 (54 S. E. 650).

Coming now to a consideration of the question as to whether, under the rules of law just stated, the judge was authorized to grant a nonsuit in the present case, because of failure of the plaintiff to make out a prima facie case as to an absolute refusal to pay by the insurer, we are convinced that the fair and necessary import of the evidence actually submitted by the plaintiff was to the effect that the defendant, although disclaiming all liability under the policy sued on, nevertheless purported to waive its exemption, by offering and continuing to offer something over $424 in settlement of the $500 claim, and in doing so contended that the amount so deducted arose from depreciation in the property. It is true that there is one clause in the plaintiff's testimony, as given in his direct examination, which, taken by itself and disconnected from his other statements, would seem to convey a different meaning. The plaintiff, in detailing his conversation with the adjuster, quotes him in one clause of the testimony as saying that "they wouldn't pay anything;" but, construing this clause of the sentence, not as an isolated statement, but in the light of its

context, that is, in connection with his other evidence immediately preceding, and with his testimony on cross-examination following, we reach the same conclusion in this respect as did the trial judge—not that "they wouldn't pay anything," but that the company offered and continued to offer the sum of $424 in full settlement, and that the reduction from the face of the policy purported to be based upon a claim of depreciation. It was held in the case of *Great American Co-operative Fire Association* v. *Jenkins*, 11 *Ga. App.* 784 (76 S. E. 159), that "unless there is a *bona fide attempt* by an insurer to adjust a loss under a policy of fire insurance, by an offer to pay a sum approximating the loss sustained, there is an 'absolute refusal to pay,' within the meaning of section 2490 of the Civil Code (1910)." The facts of that case show that the defendant had offered $60 in settlement, and that on the trial the jury found that the plaintiff had sustained a loss of $300. The court held that such an offer in such a case amounted to an absolute refusal to pay, and in the opinion it was said: "The General Assembly could not have intended that an offer of $1 in settlement of a ten-thousand-dollar loss would not be a refusal to pay. The line must be drawn somewhere, and the most rational solution would be for the jury to say whether a bona fide attempt has been made to adjust the loss, or whether the sum offered was so out of proportion to the amount due as to justify the conclusion that in reality there had been an absolute refusal to pay. If the insured suffered a loss of $300 and the company, with knowledge of this fact, offered only $60, this was such an absolute refusal to pay as waived strict compliance with the terms of the policy in reference to the character of the proofs to be furnished." The bona fide character of any act or transaction is generally, if not always, a question of fact for the jury. In the opinion from which we have just quoted it is stated that the most rational solution would be for the jury to say whether or not a bona fide attempt to adjust has been made. As indicated in that case, it is difficult to draw the line, as a matter of law, whereby an offer to settle in any particular transaction can or can not be adjudged bona fide. And then too, in considering whether or not any given effort to adjust was made in good faith, it does not seem to us that the amount of the offer must in all cases necessarily determine the question. There might be instances where the offer could not be so consid-

ered, even though the sum tendered might approximate the loss. And while we do not intend in this case in any wise to intimate whether or not in our opinion the evidence shows a bona fide attempt to adjust the loss, or whether an absolute refusal to pay has been shown, we simply hold that this issue is one which the jury should be called upon to decide.

2. Although error is assigned because the trial judge refused to permit the case to be reopened in order that additional evidence might be submitted by the plaintiff, showing an absolute refusal to pay, and while the plaintiff in his motion offered to prove that the company reported in terms, "We won't pay anything," we have based our opinion and the direction given to the case on what had been actually shown, rather than upon the theory that the refusal to reopen the case requires that a new trial be had. But for the fact that we have considered the evidence actually introduced sufficient to require a determination by the jury of the question we have discussed, we would be disposed to concur in the judgment of the trial judge that the additional evidence offered after the verbal announcement that a nonsuit would be granted was, under the circumstances of the case, insufficient to alter its status; or rather, we would hesitate to hold that his discretion therein had been abused. Until the court signs the order granting a nonsuit, the judge has control of the case; and it is not too late, as a matter of law, for a motion to be made to allow the case to be reopened for the introduction of further evidence. *Ellenberg* v. *Southern Ry. Co.*, 5 *Ga. App.* 389, 391 (63 S. E. 240). The question governing the discretion of the judge in allowing a case to be reopened for the introduction of further testimony in order to avoid a nonsuit was exhaustively discussed by the late Justice Lumpkin in the case of *Penn* v. *Georgia Southern & Fla. Ry. Co.*, 129 *Ga.* 856 (60 S. E. 172), and the rule there enunciated by him, after rviewing numerous previous decisions of our courts upon the question, is as follows: "1. Generally where counsel for a plaintiff has announced the plaintiff's evidence closed, but has omitted to introduce evidence by reason of accident, inadvertence, or even because of a mistake as to the necessity for doing so in order to make out a prima facie case, on motion the presiding judge will allow the case to be reopened and additional evidence introduced, in order to prevent a nonsuit. 2. This rule is not one of arbitrary right on the part of the plaintiff or

his counsel. The judge has a discretion in the matter, under the facts of each case, especially after announcement has been made that a nonsuit will be granted; and the exercise of such discretion will not be reversed unless it has been abused." See also *Crawford* v. *Crawford*, 139 *Ga.* 394 (6) (77 S. E. 557). We do not think that there could have been possible error in refusing to allow the plaintiff to testify again upon this question, after having already been fully examined thereon by counsel for each of the litigants, and after having fully and completely covered by his evidence the issue here involved.

Whether the court erred in refusing to reopen the case for the purpose of allowing Mr. Jesse Moore, the son of the plaintiff, to testify upon the question of such absolute refusal to pay is a closer point. But, as stated by the trial judge in his certificate, it appears to be a reasonable and necessary deduction from the evidence of the plaintiff and the letters of the defendant that, subsequently to any conversation between Jesse Moore and the adjuster of the company, the defendant offered and continued to offer the payment already indicated. In the case of *Davis* v. *Chaplin,* 110 *Ga.* 322 (2) (35 S. E. 312), it is held that "After a judge has properly announced that he will grant a nonsuit, a decision overruling a motion to reopen the case for the introduction of additional testimony will not be reversed, when it does not affirmatively appear that the granting of such motion and the introduction of the new testimony would, in connection with the evidence already in, have placed the plaintiff in a position entitling him to a recovery." Since it was not made to appear by the plaintiff's motion that the son's evidence, as then offered, related to a refusal to pay subsequent to the defendant's offer to pay, as already testified to by the plaintiff, we do not think that, under the view of the law held by the trial judge, the requirements of the rule just quoted in the *Davis* case were met. In the absence of such affirmative showing, and in view of the plaintiff's previous testimony in reference to the negotiations of himself and his son with the defendant, it would seem an altogether reasonable inference that the son's testimony would have necessarily been of the same character as that already given by the plaintiff himself. Thus, while we differ with the court below as to the legal effect of the testimony adduced, we would not hold that there was an abuse of discretion in refusing

to reopen the case, especially as the plaintiff made no offer to explain his former testimony, wherein he had stated that the defendant's offer to pay "still continued" and "was not withdrawn at any time," or to show that at the time that testimony was given he was unaware of the fact which he afterwards sought to show by the testimony offered under the motion. *Cushman* v. *Coleman, 92 Ga.* 772 (4), 778 (19 S. E. 46).

*Judgment reversed. Broyles, P. J., and Bloodworth, J., concur.*