### 22620. WALKER v. CENTRAL OF GEORGIA RAILWAY COMPANY et al.

DECIDED APRIL 5, 1933. REHEARING DENIED JULY 27, 1933.

*Ben C. Williford, Thomas L. Slappey,* for plaintiff.

*Little, Powell, Reid & Goldstein, Colquitt, Parker, Troutman & Arkwright,* for defendant.

SUTTON, J. W. H. Walker filed suit for damages against the Central of Georgia Railway Company, the Seaboard Air-Line Railway Company, and the Georgia Southwestern & Gulf Railroad, the same growing out of personal injuries to himself alleged to have been caused by a latent defective condition in a freight-car of the Seaboard Air-Line Railway Company, which that company had delivered to the Georgia Southwestern & Gulf Railroad for the purpose of being loaded with freight on the line of that railroad and consigned to some point off its line. He alleged that said freight-car was loaded with watermelons at Philema, Georgia, on the line of the Georgia Southwestern & Gulf Railroad and shipped to a produce dealer in Atlanta; that the freight-car moved over the line of that road to Albany, Georgia, and from there to the point of destination over the line of the Central of Georgia Railway, where it was sold by the consignee to one Miller; that this railroad maintained in Atlanta what is known as "a team track yard," where it places cars of watermelons and other perishable products, to be sold

by the owners thereof out of the cars in which they are shipped; that it invites and allows the prospective buyers of such products to inspect them by going into the cars; that petitioner is a peddler and retail dealer in watermelons, and, desiring to purchase some melons from said Miller, went to said team track yard of the Central of Georgia Railway with his wagon; that it became necessary for petitioner, before purchasing the melons, to inspect them as to size and weight, and, as was customarily done, with the knowledge and consent of the Central of Georgia Railway Company, petitioner went into said freight-car to inspect these melons before buying them; that while he was in the freight-car his foot went into a hole in the floor thereof, which hole was covered with the straw used in packing watermelons, and was concealed and unknown to petitioner, thereby injuring him; that it was the duty of the Seaboard Air-Line Railway Company to have inspected this freight-car before delivering it to the initial carrier to be loaded with watermelons, and, upon inspection, to have remedied the defect; that it was the duty of the initial carrier to have inspected this freight-car before it allowed watermelons to be loaded therein and consigned to a point off its line, and, upon inspection, to have remedied this defect; that the initial carrier had no car-inspector, of which fact the Central of Georgia Railway Company was aware; that it was the duty of the Central of Georgia Railway, the delivering or ultimate carrier, to inspect this car to ascertain if there was any defect in the floor, on receiving it from the initial carrier; that all the defendants failed in their duty to inspect said freight-car, and such failure on their part constituted negligence and a failure to exercise ordinary care; and that as a result of such joint and concurrent negligence the defendants and each of them have damaged petitioner.

The Georgia Southwestern & Gulf Railroad filed general and special demurrers to the petition. The trial court on June 6, 1931, passed an order sustaining the demurrers of this defendant and dismissed the case as to it. The Seaboard Air-Line Railway Company likewise demurred both generally and specially to the petition, and on June 6, 1931, its demurrer was sustained and the case dismissed as to that defendant. The Central of Georgia Railway Company likewise demurred to the petition on various general and special grounds. The trial court, on June 6, 1931, overruled

this demurrer, holding that the petition made a case by the plaintiff for submission to a jury, the same charging that this defendant operated a team track yard where it placed cars of watermelons and other produce for sale and knowingly permitted prospective buyers to come.

The plaintiff excepted pendente lite to the order of the court sustaining the demurrers of the Seaboard Air-Line Railway Company and dismissing the case as to it, and in the final bill of exceptions in this case assigns error on such exceptions pendente lite. The plaintiff likewise excepted pendente lite to the order sustaining the demurrer of the Georgia Southwestern & Gulf Railroad and dismissing the case as to this defendant, and in the final bill of exceptions in this case assigns error on such exceptions pendente lite.

The plaintiff did not attempt to except directly to the judgments sustaining the demurrers of these two defendants and dismissing the case as to them, but the case proceeded to trial against the Central of Georgia Railway Company on May 18, 1932. The plaintiff introduced evidence and the defendant moved to nonsuit the case. During the argument on this motion the court recessed until the next day. When the court convened the next day the plaintiff offered an amendment in which he alleged: that this defendant placed the freight-car involved in this case on its team track, neither Miller nor the plaintiff having any control or management over the same, except to go in and inspect the melons, the control and management being in the defendant railway; that this defendant received its pro rata portion of the freight on this car of melons, stationed the car on its team tracks, and allowed wholesale and retail buyers to enter the car; that this custom and privilege was known to the defendant railway and was a part of the consideration of the freight charges paid to it; that this defendant permitted and allowed plaintiff and other dealers in watermelons and produce to use its team tracks for a number of years and acquiesced in such use, which was frequent and continuous; that this defendant was negligent in not making a proper, reasonable, and suitable inspection of the car in this case, which was customary in cases of like character; that it was negligent in receiving the car without inspecting the same; that it was negligent in not having the car inspected by competent inspectors and in not repairing the same so as to be safe for persons entering it; and that it was un-

safe to deliver the car in such defective condition. The defendant demurred thereto on various grounds. On offering this amendment the plaintiff stated that he wished to introduce additional evidence in support thereof. The court, however, proceeded to consider the demurrer of the defendant to this amendment, and sustained the demurrer and disallowed the amendment on May 19, 1932. To this judgment the plaintiff excepts in the present bill of exceptions, which was sued out and certified by the trial judge on July 6, 1932, within sixty days from the rendition of the judgment, and within less than thirty days after the adjournment of the May term of the court. The trial court then sustained the motion of the defendant to nonsuit the case. In the bill of exceptions in this case there is no assignment of error on this judgment.

On June 17, 1932, within thirty days from date of the judgment of nonsuit and within the term, the plaintiff moved the court to set aside and vacate the judgment of nonsuit and to reinstate the case on the ground that the judgment was contrary to law and the evidence and was an illegal withdrawal of the case from the jury. The court thereupon issued a rule nisi, calling upon the defendant to show cause why the motion should not be granted. On July 1, 1932, the plaintiff amended his original motion and contended that the court should set aside its judgment of nonsuit and reinstate the case because the amendment offered by him was germane and should have been allowed, and that it was error for the court to refuse to let him introduce additional evidence in support thereof and to sustain the demurrer to the amendment. The court corrected the recitals of fact contained in the motion and stated that the plaintiff offered an amendment, which the court allowed subject to demurrer, that the defendant demurred thereto orally and the court announced orally that the demurrer was overruled and the amendment allowed, but no order was taken, and that the court at that time requested the defendant to reduce to writing its objections to the amendment and this was done. The court further stated that plaintiff offered to introduce additional testimony in support of the amendment, counsel stating what he expected to prove, and the defendant announced that there was no objection to that, and the court stated to the plaintiff that he would have to put up witnesses to prove this statement, but that if there was going to be further argument on the matter, the court would proceed with

the hearing of the argument, and the court proceeded to consider the written demurrer of the defendant to the amendment, and, after argument, passed an order sustaining the demurrer and disallowing the amendment. The court further stated that plaintiff asked to be permitted to put up Miller, one of his witnesses, stating that Miller had misunderstood his original evidence, and further asked to be allowed to introduce other evidence, and that in response to this the judge stated that he would not reopen the case and would not permit the introduction of additional evidence by the plaintiff, and that in his opinion the motion of the defendant for a nonsuit should be sustained, and thereupon ordered a nonsuit. The court then denied the plaintiff's motion to set aside the judgment of nonsuit and reinstate the case, passing this order: "The court declined to reopen the case, and granted defendant's motion to nonsuit. I decline to reinstate the case now, and overrule plaintiff's motion and amended motion to reinstate. Counsel for defendant, when the court announced that the defendant's oral demurrer to plaintiff's amendment of May 19th was overruled, made no objection to reopening the case for the introduction of additional evidence, and the court at the conclusion of argument on defendant's oral objections, and after indicating that the defendant's demurrer to said amendment was overruled, held that plaintiff would be allowed to introduce evidence in support thereof; but when defendant's written demurrer was thereafter upheld and the amendment stricken, the court then refused plaintiff's request to reopen, and nonsuited the case. The plaintiff, I thought, had wholly failed to prove case as laid, under the rulings originally made by the court on demurrers of the several defendants. The plaintiff assumed, under the case as it went to trial, as I see it, to prove that plaintiff was an invitee of defendant, and that defendant was liable to plaintiff under section 4420 of the Code, but, to the contrary, the evidence showed that the car was left to the consignee's transferee, Miller, and that plaintiff was Miller's invitee, and not the invitee of the defendant. The issue was well defined and well understood by plaintiff, and I thought and still think there was no abuse of discretion in refusing to reopen the case as requested by plaintiff. This July 1st, 1932." To this order and judgment the plaintiff excepts.

■ This action was a joint one against the three railroad com-

panies, setting up that by reason of their joint and concurrent negligence the plaintiff was damaged. The general demurrers of two of the defendants were sustained and the case dismissed as to them. The plaintiff did not sue out any direct bill of exceptions to the judgments sustaining these demurrers and dismissing the case as to these defendants, but elected to proceed to trial against the remaining defendant. The trial of the case against the remaining defendant was nearly a year after the judgments dismissing the case as to two of the defendants. Exceptions pendente lite to these judgments, were filed and error is assigned thereon in the bill of exceptions in this case. After the court had sustained the demurrers of two of the defendants and dismissed the case as to them, and the plaintiff not having excepted directly to such final judgment, but elected to proceed to trial against the remaining defendant, the action ceased to be a joint one and became an action for damages for the negligence of the remaining defendant. The plaintiff's remedy was to except directly to these final judgments. The exceptions pendente lite did not have the effect of preserving the joint action. Where the judgment is a final disposition of the case, or is final as to some material party to the case, a direct bill of exceptions lies to this court. Civil Code (1910), § 6138. Exceptions pendente lite are exceptions to rulings made pending the litigation. The judgments on these demurrers were final, and terminated the case as to two of the defendants; and for the plaintiff to preserve the joint status of the case he should have excepted directly to such rulings. In effect, the plaintiff, by failing to except directly and by proceeding to trial against the remaining defendant, acquiesced in the final judgments dismissing the case as to the two defendants. The plaintiff can not now ask this court to restore the joint status of the action. No joint action was pending in the court below at the time the court sustained the demurrer to the amendment, nonsuited the plaintiff, and refused to reinstate and reconsider the case on motion by the plaintiff. Under these circumstances we think that the attempt in the bill of exceptions in this case to assign error on the exceptions pendente lite, excepting to the judgments on these demurrers, was futile, as the joint action had ceased to exist when the plaintiff failed to except directly to the judgments sustaining the demurrers as to the two defendants and acquiesced therein by proceeding to trial against the remain-

ing defendant; and as to the two defendants whose demurrers were sustained the bill of exceptions is dismissed. *McGaughy* v. *Latham,* 63 *Ga.* 67; *Kollock* v. *Webb,* 113 *Ga.* 762 (39 S. E. 339); *Ellis* v. *Almand,* 115 *Ga.* 333 (41 S. E. 642); *Wood* v. *Stevens,* 144 *Ga.* 518 (87 S. E. 658); *Poole* v. *Southern Railway Co.,* 34 *Ga. App.* 290 (129 S. E. 297); *Vandiver* v. *Georgia Railway & Power Co.,* 38 *Ga. App.* 59 (143 S. E. 455); *McRae* v. *Refining Co.,* 43 *Ga. App.* 422 (159 S. E. 133).

■ It is insisted by the defendant Central of Georgia Railway Company that as no exceptions pendente lite were filed to the judgment sustaining the demurrer to the amendment offered by the plaintiff, there is no assignment of error which can be considered by this court except that relating to the refusal of the court to reinstate the case on motion of the plaintiff. We can not agree with this view. The court did not adjourn within thirty days from the date of the organization and opening of the court. The plaintiff assigned error in the bill of exceptions upon the judgment sustaining the demurrer to the amendment and the bill of exceptions was sued out and certified within sixty days from the date of the judgment sustaining the demurrer and within thirty days from the adjournment of the term at which that judgment was rendered. In these circumstances the plaintiff could properly in the final bill of exceptions assign error on the judgment sustaining the demurrer. Civil Code (1910), § 6152.

■ The plaintiff introduced evidence tending to establish the allegations of his original petition. The evidence of the plaintiff showed that the defendant placed carloads of watermelons on its team track yards in Atlanta and allowed the consignees thereof, or their assignees, to wholesale and retail the melons from the freight-cars and unload them in this manner, and in so doing permitted their prospective customers for the purchase of the melons to come into the cars to inspect the contents, that the defendant had a yardmaster and agents in charge of these team track yards, that the consignees had no control over the box-cars except as to the sale of the melons therefrom, that the plaintiff, a watermelon peddler, went to these yards with his wagon to purchase some melons, and went into the box-car containing melons, which Miller was selling, to inspect the melons before buying any of them, that there was a hole in the floor of the car, covered with the straw used in

packing the melons in the car, that plaintiff could not see the hole because it was so covered with straw, that Miller did not know thereof, that plaintiff stepped into the hole and was injured, that it was customary for the defendant to inspect freight-cars received from connecting carriers, and that an inspection of the freight-car in question would have disclosed the hole in the floor. The evidence further showed that while the car of melons was billed to L. E. Holloway & Company, it was purchased from this company by Miller and the bill of lading turned over to him. In these circumstances, we think the plaintiff made a prima facie case which should have been submitted to the jury, and that it was error for the court to nonsuit the plaintiff.

■ The amendment offered was germane to the original cause of action and should have been allowed by the court. The right to amend is very broad, and the practice of allowing amendments is very liberal. *Jenkins* v. *Lane,* 154 *Ga.* 454 (115 S. E. 126). The code states that the amendment may be made at any stage of the cause. Civil Code (1910), § 5681. Even after the jury has been discharged, the amendment will be allowed if the judge has not signed the judgment. *Freeman* v. *Brown,* 115 *Ga.* 23 (41 S. E. 385); *Swilley* v. *Hooker,* 126 *Ga.* 353 (55 S. E. 31). Of course, then an amendment would not be too late if presented when a motion for nonsuit was being considered and the case had not been submitted to a jury. *City of Columbus* v. *Anglin,* 120 *Ga.* 785 (48 S. E. 318). It has been held that where the evidence has been concluded and the jury is considering the case, an amendment may be allowed. *Cureton* v. *Cureton,* 120 *Ga.* 559, 565 (48 S. E. 162). So it can hardly be said that the amendment in this case, which was offered before judgment and while the court was considering the motion to nonsuit, came too late, and, the same being germane to the original cause of action, it should have been allowed by the court.

The original cause of action was for damage caused by a concealed hole in a freight-car, in which the plaintiff stepped, and the plaintiff set up that he was in the freight-car as an invitee of the defendant railway company. In this amendment he sought to set up further that the defendant, Central of Georgia Railway Company, had complete control over this freight-car, that it received its part of the freight for hauling the car of melons, and stationed

the car on its tracks and allowed buyers of melons, of whom plaintiff was one, to enter the car, that this was the custom and was known to the defendant and was a part consideration of the freight charges paid to it, that the defendant had allowed the plaintiff and other dealers in melons and produce to use its team tracks for a number of years and acquiesced therein, and that such use was continuous. The plaintiff further set up therein that the defendant was negligent in failing to make a proper and suitable inspection of this freight-car, such as was customary in cases of like character, that it was negligent in receiving the car without inspecting it and in not having it inspected by competent inspectors, that it should have discovered the defect in the floor and repaired it, and that it was unsafe to deliver the car in its defective condition. The plaintiff offered to introduce evidence to substantiate the allegations of the amendment.

This court has held that "the duty of inspecting the condition of cars used in its trains is one of the absolute duties of a railroad company" and that "This applies to cars received from connecting carriers." *Lucas* v. *Southern Railway Co.*, 1 *Ga. App.* 810 (57 S. E. 1041). In *Roy* v. *Georgia Railroad & Banking Co.*, 17 *Ga. App.* 34 (2) (86 S. E. 328), it was held that this duty was placed upon the ultimate carrier, that it owed this duty to the consignee or his servant when they or either of them were engaged in unloading the car at the point of destination, and that this was so although the car was placed on a side track belonging to the consignee. In that case it was further held that it was the duty of the railroad company to keep the car in a reasonably safe condition and to inspect it and ascertain whether it was in a reasonably safe condition, and, when it was found to be dangerously defective, to make the necessary repairs or notify the consignee of such dangerous defects. In *Savannah &c. Ry. Co.* v. *Booth,* 98 *Ga.* 20 (25 S. E. 928), it was held that the railroad company would be liable to one injured from defects in a car furnished for the purpose of being loaded, provided the defect could be discovered by an ordinary inspection on the part of the railroad company. In *A. & W. P. R. Co.* v. *Smith,* 38 *Ga. App.* 20 (142 S. E. 308), it was held that a railroad company was liable where the car had a hole in the floor, which could not be easily discovered by one unloading the car, and such person fell in the hole and was injured. The plaintiff was not the original con-

signee, but he alleged that the car of melons was billed to L. E. Holloway & Company and was purchased by Miller. This probably was subject to special demurrer, but, in the absence thereof, it means that Miller was the assignee of the original consignee. A bill of lading is a negotiable instrument and is transferable. Civil Code (1910), §§ 4133, 4134. The plaintiff was engaged upon a lawful business with the assignee of the original consignee, and it was alleged that consignees of carloads of melons or other produce were customarily allowed by the defendant to sell the products from the freight-cars on its team tracks and to permit prospective buyers to go in the cars to inspect the products therein offered for sale.

We are of the opinion, therefore, that the amendment offered was germane to the original cause of action, and set up matters which, if substantiated by competent evidence, would have allowed the case to go to a jury, regardless of whether the evidence already introduced by the plaintiff made a case for submission to the jury.

■ It is earnestly contended by the defendant that since no direct exception to the judgment granting the nonsuit was taken by the plaintiff, the only questions for review before this court are the rulings on the demurrer to plaintiff's amendment and the refusal of the court to reinstate the case, and that even if the court did erroneously sustain the demurrer, it would not follow that a reversal of the judgment should be entered as a matter of course, and that the trial judge had a discretion as to whether or not he should grant the motion to reinstate, and that this court will not disturb his judgment refusing to reinstate the case unless his discretion was manifestly abused.

Where a nonsuit has been granted, the losing party either may bring his case direct to the appellate court by writ of error, or, during the term of the court at which the judgment of nonsuit was rendered, may move to reinstate the case, and, from a refusal of that motion properly made, may take the case up for review to the appellate court having jurisdiction thereof. *Aiken* v. *Peck,* 72 *Ga.* 434; *Hudson* v. *Georgia Pac. Ry. Co.,* 85 *Ga.* 203 (11 S. E. 605); *City of Atlanta* v. *Jenkins,* 137 *Ga.* 454 (73 S. E. 402; *Glenn* v. *Glenn,* 152 *Ga.* 793 (111 S. E. 378). It seems that where a case has been nonsuited, the plaintiff has two remedies, to come up at once to the appellate court by writ of error, or to try the court be-

low "on any legitimate motion before that court, enabling it to review its own judgments first," and "upon that more deliberate ruling to except and bring the cause here." *Aiken* v. *Peck,* supra. "The grant of a nonsuit terminates the case without a final passing upon the issues of fact by a jury, referee, or judge. It is a ruling by the judge, that the plaintiff, under the evidence presented by him, has not made out such a case as to entitle him to have the jury pass upon the issues of fact. It is a ruling of law by the judge, not a determination of the issues of fact." *Buchanan* v. *James,* 134 *Ga.* 475 (2) (68 S. E. 72). In that case it was held that a motion for new trial was not the proper way to review such a judgment. In *Van Dyke* v. *Van Dyke,* 120 *Ga.* 984, 986 (48 S. E. 380), it was held that "where a question of law alone is presented to the court for decision, no discretion is involved, but the point must be decided according to the law governing it," and the court approved the decision in *Aiken* v. *Peck,* supra.

This court is not unaware of the cases of *Central Railroad* v. *Folds,* 86 *Ga.* 42 (12 S. E. 216), *Southern Ry. Co.* v. *James,* 114 *Ga.* 198 (39 S. E. 849), *City of Atlanta* v. *Miller,* 125 *Ga.* 495 (54 S. E. 538), and *Glenn* v. *Glenn,* supra, wherein it was held that "Whether such motion will be granted is a matter within the legal discretion of the trial judge; and where he reinstates the case his discretion will not be controlled, unless manifestly abused." The motion to set aside the judgment of nonsuit and reinstate the case was predicated on the judgment of nonsuit, and, under the principles announced above, it is our opinion that if the judgment of nonsuit was illegal for any reason, then it was error and an abuse of discretion for the judge to refuse to set aside the judgment on proper motion and reinstate the case. As stated above, we are of the opinion that the judgment of nonsuit was erroneous, first, because the plaintiff proved a prima facie case, and, second, even if he had not done so, the amendment offered amplified the allegations in the original petition and was germane thereto, and the evidence offered in support thereof, together with the evidence introduced in the case, was certainly sufficient to make a case for submission to a jury.

■ But it is now insisted that as the court refused to allow the amendment, the plaintiff having theretofore closed his evidence and rested, the court did not abuse its discretion in refusing to reopen

the case and allow additional evidence and in awarding the judgment of nonsuit, even if the amendment and offered evidence set up matters which, in connection with the original evidence, would have entitled the case to go to a jury.

It has been held that "It is almost a matter of course to let in new evidence on a point to save a nonsuit." *McColgan* v. *McKay*, 25 *Ga.* 631; *Parker* v. *Fulton Loan & Bldg. Asso.*, 42 *Ga.* 451 (4), 456; *Pitts* v. *Florida Central R. Co.*, 98 *Ga.* 655, 661, 666 (27 S. E. 189). "Generally, where counsel for a plaintiff has announced the plaintiff's evidence closed, but has omitted to introduce evidence by reason of accident, inadvertence, or even because of a mistake as to the necessity for doing so in order to make out a prima facie case, on motion the presiding judge will allow the case to be reopened and additional evidence introduced, in order to prevent a nonsuit. This rule is not one of arbitrary right on the part of the plaintiff or his counsel. The judge has a discretion in the matter, under the facts of each case, especially after an announcement has been made that a nonsuit will be granted; and the exercise of such discretion will not be reversed unless it has been abused." *Penn* v. *Georgia Southern &c. Ry. Co.*, 129 *Ga.* 856 (60 S. E. 172). In a case where the plaintiff might well have contended that he had made out a prima facie case, and, after he had rested his case, the judge intimated that he was going to grant a nonsuit, and then the plaintiff sought to introduce additional evidence in support of his case, it was held that the court erred in refusing to allow him to do so. *Wickham* v. *Torley*, 136 *Ga.* 594 (71 S. E. 881, 36 L. R. A. (N. S.) 57). "After a judge has properly announced that he will grant a nonsuit, a decision overruling a motion to reopen the case for the introduction of additional testimony will not be reversed, when it does not affirmatively appear that the granting of such motion and the introduction of the new testimony would, in connection with the evidence already in, have placed the plaintiff in a position entitling him to a recovery." *Davis* v. *Chaplin*, 110 *Ga.* 322 (2) (35 S. E. 312). It was held in *Moore* v. *Dixie Fire Ins. Co.*, 19 *Ga. App.* 800, 807 (92 S. E. 302), that in the absence of such an affirmative showing, it was not error for the court to refuse to let in additional evidence. "If, upon the conclusion of an argument on a motion for a nonsuit, the plaintiff so amends his declaration that the facts newly alleged, being proven, would en-

title him to recover, it is error for the presiding judge to either refuse a motion by the plaintiff to reopen the case to allow the submission of additional evidence in support of the amendment, or to impose upon the plaintiff, as a condition to the grant of such a motion, that he shall not himself be further sworn as a witness; and this is true even though he had previously deposed to facts in apparent conflict with the facts alleged in the amendment to the declaration." *Pitts* v. *Florida Central R. Co.*, supra. To the same effect see *Ray* v. *Green*, 113 *Ga.* 920 (39 S. E. 470). In an opinion written by Powell, J., when he was on this court, it was ruled that "Except in rare cases, as where the defendant would be subjected to unfairness or undue prejudice, or where the plaintiff has given evidence of an intention deliberately to trifle with the court, or to delay the progress of the trial, it is an abuse of discretion for the trial judge to refuse to allow the plaintiff to produce additional evidence sufficient to avoid a nonsuit." *Ellenberg* v. *Southern Ry. Co.*, 5 *Ga. App.* 389 (63 S. E. 240). The decisions in the above cases, we think, express the true rule on this subject.

Therefore, applying the above principles, regardless of whether the plaintiff originally proved a prima facie case, it is our opinion that the trial judge erred, under the facts of this case, in refusing to allow the amendment, reopen the case, and allow additional evidence in support of the amendment and supplementing the evidence already introduced, where such additional evidence would have made a case for the jury, when coupled up with the original evidence.

This court has not overlooked the decisions in *Cushman* v. *Coleman*, 92 *Ga.* 772 (19 S. E. 46), *Brooke* v. *Lowe*, 122 *Ga.* 358 (50 S. E. 146), and *Mitchell* v. *Southern Ry. Co.*, 23 *Ga. App.* 195 (98 S. E. 184). That these decisions are not in conflict with what has been stated above, see the opinion in *Penn* v. *Georgia &c. Ry. Co.*, supra.

■ Accordingly, the judgment refusing to set aside the judgment of nonsuit and reinstate the case was erroneous and must be reversed, but, there being no proper exception to the judgments dismissing the case as to the other two defendants, the bill of exceptions is dismissed in so far as these defendants are concerned.

*Judgment reversed as to the Central of Georgia Railway Com-*

pany. *Writ of error dismissed as to Seaboard Air-Line Railway Company and Georgia Southwestern & Gulf Railroad. Jenkins, P. J., and Stephens, J., concur.*